IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

_____

| | |
|---|---|
| UNITED STATES OF AMERICA | Criminal No. |
| v. | 3:19-CR-521 |
| BETH ELLEN DEGROOT (01) | |

# GOVERNMENT'S MEMORANDUM
# IN SUPPORT OF ITS MOTION FOR PRETRIAL DETENTION

The United States of America, by and through Erin Nealy Cox, United States Attorney for the Northern District of Texas, and Robert Zink, Chief, Department of Justice, Criminal Division, Fraud Section, respectfully submits this memorandum in support of the government's motion for pretrial detention of defendant Beth Ellen DeGroot pursuant to 18 U.S.C. § 3142.

DeGroot actively assisted a defendant in another action – Harley E. Barnes, III – to circumvent this Court's order setting the conditions of his release in that case. DeGroot also helped Barnes to avoid detection by law enforcement by serving as a third-party intermediary for him to use to facilitate prohibited communications with witnesses and victims as part of a concerted effort to sell securities in EarthWater, a company that was at the heart of the high-yield investment fraud scheme for which he was indicted. When DeGroot later received a federal grand jury subpoena requesting her communications with Barnes and the communications she had sent and received as an intermediary, she

concealed the evidence from the grand jury, including by intentionally altering a document she produced. DeGroot poses a serious risk of continued obstruction, including the affirmative risk that she will continue to manufacture evidence. That serious risk is not limited to the judicial proceedings in her case; it also threatens the integrity of the proceedings in Barnes' case, which is scheduled for trial in March 2020. Moreover, in light of her extensive and persistent efforts to continue to use EarthWater to raise money (even after Barnes was indicted for fraud involving the same company), DeGroot poses a serious danger of economic harm to the community, including to the victims of the EarthWater fraud. For all of these reasons, DeGroot should be detained pending trial.

## BACKGROUND

On March 5, 2019, a grand jury returned a twenty-one count indictment charging Barnes and five others with conspiracy, mail and wire fraud in connection with a high-yield investment fraud involving a company called EarthWater. The scheme targeted elderly victims. Based on the investigation to date, Barnes and the other defendants in that case defrauded hundreds of victims of over $10 million.

On May 6, 2019, Barnes was arrested. At his initial appearance, the Court entered an order setting the conditions of his pretrial release, which included that he was required to "avoid all contact, directly or indirectly, with any person who is or may be a victim or witness in the investigation or prosecution, including any co-defendants." *United States v. Barnes, et al.*, 3:19-cr-112-K (Doc. No. 9). He was also "prohibited . . . from selling, promoting, or advising on the purchase or sale of securities." (*Id.*)

**U.S. v. DeGroot**
**Government's Memorandum - Page 2**

On September 16, 2019, the government moved to revoke Barnes' release. *United States v. Barnes, et al.*, 3:19-cr-112-K (Doc. No. 92). In support, the government admitted evidence showing that, as soon as Barnes was released, he partnered with DeGroot (EarthWater's then-Vice President), to continue to use EarthWater to raise money, including by selling stock. The evidence also showed Barnes and DeGroot worked together to evade detection by law enforcement by creating and using new email accounts (masterplan150@gmail.com and tristargroupllc@yahoo.com), obtaining a new mobile telephone and number for Barnes (which DeGroot put in her name), and using DeGroot as a third-party intermediary to facilitate prohibited communications between Barnes and prohibited parties, including victims and witnesses.

Following a hearing on September 20, 2019, the Court found Barnes violated his conditions of release because he was directly and indirectly contacting witnesses and victims, including as part of a continued effort to promote and sell EarthWater securities. *United States v. Barnes, et al.*, 3:19-cr-112-K (Doc. No. 98). The Court further found Barnes was unlikely to abide by any condition or combination of conditions of release it could impose. Accordingly, the Court revoked his release and ordered him detained pending trial.

On October 22, 2019, a grand jury returned a two-count indictment charging DeGroot with obstruction of justice. The indictment alleges that, in June 2019, as part of an ongoing federal grand jury investigation, DeGroot was served with a subpoena for documents. The indictment further alleges that, in July 2019, DeGroot concealed from

**U.S. v. DeGroot**
**Government's Memorandum - Page 3**

the grand jury the existence of the new email accounts that she and Barnes were using to communicate with prohibited parties about using EarthWater to raise money (namely, masterplan150@gmail.com and tristargroupllc@gmail.com) and the emails sent and received from these accounts. According to the indictment, DeGroot altered a document that she delivered to the grand jury in response to the subpoena, and lied about the existence and use of these email accounts in a written submission to the grand jury and in a telephone call with a federal law enforcement agent (which was recorded).

In addition, the indictment alleges DeGroot impeded the federal grand jury's investigation by falsely claiming she had not received any funds from Barnes following his arrest when, in truth, Barnes had directed his EarthWater payroll checks be deposited into DeGroot's personal bank account. The effect of DeGroot's obstruction was to conceal her involvement in a scheme to obtain money from EarthWater's payroll processor, as well as her opening of a bank account for Barnes to use to avoid forfeiture of his funds.

## ARGUMENT

When a case involves a serious risk that a defendant will obstruct justice, the Bail Reform Act of 1984 provides that "a judicial officer shall hold a hearing to determine whether any condition of or combination of conditions... will reasonably assure … the safety of any other person and the community." 18 U.S.C. § 3142(f)(2).  If after a hearing, the Court "finds that no conditions will reasonably assure … the safety of any other person and the community, such judicial officer shall order the detention of the person before trial." 18 U.S.C. § 3142(e)(1). The judicial officer shall "take into account the available

information concerning--(1) the nature and circumstance of the offense charge...; (2) the weight of the evidence against the person; (3) the history and characteristics of the person...; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release...." 18 U.S.C. § 3142(g).  The government must prove a serious risk that a defendant will obstruct justice by "a preponderance of the evidence," *United States v. Friedman*, 837 F.2d 48, 49 (2d Cir. 1988), and the government must prove danger to the community by "clear and convincing evidence," 18 U.S.C. § 3142(f).

## I.     THERE IS A SERIOUS RISK THE DEFENDANT WILL CONTINUE TO OBSTRUCT JUSTICE

There is substantial evidence showing that DeGroot assisted Barnes in his willful violation of the conditions of his release and, in so doing, attempted to avoid detection by law enforcement.   Specifically, the evidence shows that DeGroot systematically served as a third-party intermediary to facilitate prohibited communications with witnesses and victims about prohibited subjects, like continuing to sell EarthWater securities.

On May 7, Barnes got a new cell phone number (XXX.XXX.3161), which DeGroot put in her name and paid for using her credit card.   (Exhibit 1.)   On May 9, Barnes created a new email account:  masterplan150@gmail.com.  (Exhibit 2.)   On May 10, DeGroot also created a new email account: tristargroupllc@yahoo.com.   (Exhibit 3.)

DeGroot told EarthWater's payroll processor that she and Barnes could no longer use their EarthWater email addresses because their EarthWater email accounts had been

**U.S. v. DeGroot**
**Government's Memorandum - Page 5**

"compromised." (Exhibit 4.) She also directed the payroll processor not to email Barnes because "[t]hey are watchng [sic] all his email." (*Id.*) She said she was "forwarding all emails to him." (*Id.*) As discussed in greater detail below, DeGroot also directed several other people not to contact her or Barnes using their EarthWater email, warning them that those accounts had been "compromised." (Exhibit 5.)

Around this time, Barnes texted a witness, Person A (Consultant)[1], using his new phone, to direct Person A to use a "trusted" intermediary – DeGroot – to facilitate communications between them; Barnes also sought to use DeGroot to facilitate money transfers to avoid forfeiture of funds to the government:

> Beth DeGroot mobile #XXX.XXX.9118. Text or call. She is our VP, shareholder very trusted by me, … and can guide you through helping me out personally. I'll give her your number as well. … My personal accounts are subject to forfeiture. Please wire to Beth DeGroot Routing #111000614 Account #XXXXX9368…

(Exhibit 6.)

Clear evidence confirms DeGroot agreed to this role. DeGroot subsequently texted Person A (Consultant) to explain him that Barnes was not able to speak with Person A (Consultant) about "certain things" and instruct him that another third-party intermediary – Person B (Business Associate)[2] – would let Person A (Consultant) know what Barnes and DeGroot needed from him. (Exhibit 7.) DeGroot also emailed Person C (Victim),

---

[1] Barnes had previously paid Person A as a consultant for, among other things, introducing him to potential investors.

[2] Person B (Business Associate) had previously done work for EarthWater as an attorney but, at that time, was acting as a business associate.

**U.S. v. DeGroot**
**Government's Memorandum - Page 6**

an elderly victim who had lost $150,000, among others, to request that they "refrain from including Buddy in emails regarding selling, advising or promoting securities," and instead direct communications through her: "I will coordinate with [Person B (Business Associate)]." (Exhibit 5.)

Substantial evidence also demonstrates DeGroot agreed to serve as a third-party intermediary to facilitate money transfers to avoid forfeiture of funds to the government. Less than a week after Barnes cautioned Person A (Consultant) that his "personal accounts are subject to forfeiture," DeGroot opened a new bank account in her name at Happy State Bank. DeGroot initially tried to open a new corporate bank account in the name of TriStar Marketing Group, LLC ("TriStar"), a company owned and controlled by Barnes. When, however, the bank explained Barnes would have to be a signatory, Barnes and DeGroot decided DeGroot would open a personal bank account in her name only. The day after that account was opened, Barnes directed EarthWater's payroll processor to deposit his paychecks to DeGroot's new personal bank account. (Exhibit 8.) Bank records reflect DeGroot's receipt of Barnes' paycheck in the amount of around $3,100. (Exhibit 9.)

When DeGroot received a federal grand jury subpoena seeking these and other communications and records, DeGroot responded by producing a single email in which she an author or recipient. Based on an analysis of the document that DeGroot produced (Exhibit 10) and a comparison of that document against copies produced by Person B (Business Associate) and Person C (Victim) (Exhibits 5 and 11), DeGroot intentionally altered the email before providing it to the grand jury. The effect was to conceal the

**U.S. v. DeGroot**
**Government's Memorandum - Page 7**

existence of the new email accounts that she and Barnes were using, and the contents of those new accounts which, as discussed below, constitute evidence that Barnes violated the conditions of his release as well as evidence of other possible crimes, such as wire fraud.

Specifically, DeGroot altered the "from" line to obscure her new email address and also altered the "cc" line to delete Barnes and his new email address entirely, which would mislead the reader to believe Barnes had not been sent a copy of the email when, in fact, he had.  DeGroot also altered the email by deleting entire sentences:  she deleted her warning that "EarthWater email has been compromised" and her instruction to "not use earthwater email addresses."

The extensive and deceptive nature of DeGroot's conduct establishes by a preponderance that she poses a serious risk of obstruction.  In addition to the serious risk that she will continue to conceal evidence, there is a serious risk that she will affirmatively alter or manufacture evidence, as she did in response to the federal grand jury subpoena.  That risk threatens not only the integrity of the judicial proceedings in connection with her own case, but also with respect to the pending case against Barnes, which is scheduled to go to trial in March 2020.

There is also an independent threat DeGroot will dissipate and hide Barnes' assets to avoid forfeiture or payment of restitution to the victims of the EarthWater fraud.  The evidence clearly establishes that Barnes is concerned about forfeiture and

that, following the time Barnes expressed his concern, DeGroot took affirmative steps to help Barnes hide funds.[3]

## II.   THE DEFENDANT POSES AN ECONOMIC DANGER TO THE COMMUNITY

DeGroot also poses an economic danger to the victims of the EarthWater fraud and others.  Victim funds provided a significant source of income to DeGroot from at least 2018 through the date of Barnes' release.  DeGroot received over $60,000 in payroll checks during this time.  (Exhibit 12.)   In addition, in 2018, DeGroot's daughter received nearly $20,000 in payroll checks.  (*Id.*)

After DeGroot learned Barnes had been indicted for his lead role in a high-yield investment fraud involving the sale of EarthWater stock to elderly victims, she engaged in a concerted effort to continue using EarthWater to raise money for her personal benefit:

- On May 6, 2019, shortly after DeGroot learned that Barnes had been arrested and EarthWater's offices searched, an individual using DeGroot's IP address logged into EarthWater's online banking account at Bank of America and wired $20,000 from EarthWater's "investment account" – which held the proceeds of the crimes for which Barnes and others were indicted – to a Wells Fargo account ending 7375, which belongs to DeGroot (Exhibits 13, 14, 15).[4]

- In May 2019, DeGroot worked with Barnes on a two-step plan to use EarthWater to raise more money by swapping and selling stock.  (Exhibit 16.)   They proposed a stock deal in which the victims who Barnes had defrauded would

---

[3] These same arguments apply to the first and second factors to be considered under Section 3142(g): (1) the nature and circumstance of the offense charge...; and (2) the weight of the evidence against the person.

[4] An individual also using DeGroot's IP address also attempted to transfer $210,000 to a bank account in the name of another entity controlled by Barnes, among others, however, that transfer failed because, by that time, the bank had processed a seizure order that froze EarthWater's bank accounts.  (Exhibit 13.)

**U.S. v. DeGroot**
**Government's Memorandum - Page 9**

swap their old EarthWater stock for new stock in a newly-formed corporate entity (referred to in the plan as "NewCo, LLC").   EarthWater would essentially be re-incorporated under an assumed name and then issue and sell $2.5 million in new stock.   DeGroot shared the plan with Person C (Victim).   (Exhibit 17.)   Around that time, DeGroot also reached out to another victim, Person D (Victim), who had lost approximately $1.5 million.   (Exhibit 18.)

- In May and June 2019, DeGroot exchanged numerous emails with Person C (Victim) about selling EarthWater to the general public by commencing an initial public offering.   (Exhibits 10, 20.)

- Also in May and June 2019, DeGroot engaged in a scheme to continue to receive payroll checks from EarthWater's payroll processor even though she knew EarthWater could not actually fund its payroll.   DeGroot did not tell the payroll processor about Barnes' indictment and misrepresented that EarthWater was able to fund payroll, directing the payroll processor to draw funds from a bank account she already knew had been frozen.   (Exhibit 19.)   Barnes gave DeGroot a pay raise.   (Exhibit 12.)   DeGroot then submitted payroll requests for the first and second cycles of May 2019, directing the payroll processor to pay her and Barnes over $40,000.   The payroll processor released paychecks for the first cycle, but stopped payment on the second cycle after independently learning of Barnes' indictment.   (Exhibit 12.)

- On June 5, 2019, DeGroot texted Person C (Victim) to ask him to send her $108,000 in "urgently needed" funds.   (Exhibit 21.)   DeGroot included a list of "AP" or 'Accounts Payable,' including personal expenses such as past due auto expenses ($900), auto insurance ($700), director and officer insurance premiums ($3,000), and payroll (over $60,000).   When Person C (Victim) declined to give DeGroot money, explaining he had already lost a substantial amount investing in EarthWater, DeGroot lied to Person C (Victim), claiming that she had "not been paid in 6 weeks," when, in reality, she had received a payroll check from EarthWater's payroll processor only two weeks prior.   (*Id.*)

The incentives that led DeGroot to use EarthWater to raise money persist: her need for cash.   As explained above, DeGroot relied on the proceeds of the fraud to pay her salary.   Now that victim funds have stopped flowing into EarthWater, DeGroot no longer has access to that source of money.   As far as the government is aware, DeGroot is

currently unemployed. Moreover, on July 15, 2019, DeGroot purchased a new home, taking out a mortgage for over $250,000. (Exhibit 22.)[5] In light of these facts, DeGroot's financial situation is only likely to worsen, not improve. Therefore, unless detained, she will continue to be incentivized to contact old victims for more money or to find new victims to whom she can sell securities.

### III. THE DEFENDANT IS UNLIKELY TO ABIDE BY ANY CONDITIONS OF RELEASE

There is clear and convincing that DeGroot will not abide by the conditions of release. DeGroot demonstrated a complete lack of respect for this Court's authority when she assisted Barnes to violate the conditions of his release and attempted to evade detection by law enforcement. DeGroot again demonstrated a lack of respect for the judiciary when she concealed evidence from the federal grand jury and produced an altered document that had the effect of misleading the grand jury about the existence of other evidence. In light of this deceptive conduct – which is amply demonstrated by emails, text message and witness statements – there is clear and convincing evidence that DeGroot is unlikely to abide by whatever conditions this Court may impose.

---

[5] The source of the funds is unknown at this time.

**U.S. v. DeGroot**
**Government's Memorandum - Page 11**

## **CONCLUSION**

For the foregoing reasons, the government respectfully requests that the Court order the defendant, Beth Ellen DeGroot, detained pending trial.

Respectfully submitted,

ROBERT ZINK
CHIEF, FRAUD SECTION
Criminal Division, U.S. Department of Justice

//s// Christopher Fenton
CHRISTOPHER FENTON
Trial Attorney
Christopher.Fenton@usdoj.gov
WILLIAM H. BOWNE
Trial Attorney
William.bowne2@usdoj.gov
Fraud Section, Criminal Division
United States Department of Justice
1400 New York Avenue, NW
Washington, D.C. 20005
Telephone: (202) 514-0561
Fax: (202) 514-0152

ERIN NEALY COX
UNITED STATES ATTORNEY

Mary Walters
Assistant United States Attorney
Texas State Bar No. 24003138
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Telephone:   214-659-8600
Facsimile:   214-659-8812
Email:   mary.walters@usdoj.gov

<u>CERTIFICATE OF SERVICE</u>

Undersigned counsel hereby certifies that the foregoing document was filed via ECF and, thereby, counsel of record was served.

> //s// <u>CHRISTOPHER FENTON</u>
> CHRISTOPHER FENTON
> Trial Attorney
> Christopher.Fenton@usdoj.gov
> Fraud Section, Criminal Division
> United States Department of Justice
> 1400 New York Avenue, NW
> Washington, D.C. 20005
> Direct Line: (202) 514-0660/Fax: (202) 514-0152